J-S12026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANK PICCOLO, | |
| Appellant | No. 1060 EDA 2014 |

Appeal from the Judgment of Sentence November 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002621-2013, CP-51-CR-0002622-2013, CP-51-CR-0002645-2013

BEFORE:  BOWES, SHOGAN, and FITZGERALD,** JJ.

MEMORANDUM BY BOWES, J.*:                    **FILED JUNE 04, 2015**

Frank Piccolo appeals from the judgment of sentence of one to two years incarceration to be followed by six and one-half years of probation after the court found him guilty of two counts of harassment, and one count each of terroristic threats, criminal trespass, unauthorized use of a motor vehicle, and contempt.  We affirm.

The victim in this matter is Appellant's estranged wife.  She and Appellant have three children together and formerly resided together.  On

---

* This matter was reassigned to this author on April 21, 2015.
** Former Justice specially assigned to the Superior Court.

December 14, 2012, the victim and her two daughters were residing in an apartment with the victim's sister. On that date, Appellant told the victim and his daughters that he needed a ride because his vehicle broke down. One of Appellant's daughters drove to Appellant's residence to give him a ride. However, rather than direct his daughter to where he needed to travel, he asked her to take him to where she and her mother were staying. When they arrived, Appellant left with the car. The victim reported the car stolen that same day and her brother discovered the vehicle parked on the side of a road. He returned the vehicle to his sister, who then attempted to use a device to prevent the vehicle from being driven.

Not dissuaded, Appellant again took the vehicle without permission on December 20, 2012. The victim's brother did not retrieve the vehicle until January 20, 2013. On December 23, 2012, Appellant sent the victim a slew of text messages, including a message stating, "I'm going to fuck your face up so bad you will look like you were in a car wreck. You won't even know when it will happen. And you will see—all you will see is red stars and wake up screaming in horror. That's your future, dude." N.T., 9/20/13, at 11.

The victim obtained a protection from abuse ("PFA") order the next day. Police attempted to serve Appellant with the PFA at his residence. Despite Appellant's vehicle being present and lights being on in the home, Appellant did not respond to the door. Accordingly, the police placed the order between Appellant's screen and front doors. At approximately 5:45

- 2 -

p.m., Appellant entered the apartment where his wife was staying. At the time, the victim was showering but could hear her daughters yelling at Appellant to leave. The victim opened the door to the bathroom and saw Appellant in the front entrance. She telephoned police and Appellant left. When police arrived, they saw that the front door had been damaged in a manner consistent with forced entry. Appellant did not have a key to the apartment.

Thereafter, on January 7, 2013, police attempted to serve an arrest warrant on Appellant based on charges of terroristic threats and harassment. Police found Appellant hiding in a crawl space in his basement and placed him under arrest. Appellant did not remain incarcerated, and on January 22, 2013, he again took the victim's car without permission. Appellant's daughters retrieved the car the next day, which had a chain and padlock on the steering column and brake pedal. Despite these efforts, the car was driveable and police were able to remove the padlock after Appellant's daughters brought it back to the victim's apartment. As police were removing the padlock, Appellant arrived at the apartment with a key to the padlock and contended that the car was his. Police again placed him under arrest.

Appellant waived his right to a jury trial. Thereafter, the court found Appellant guilty of the aforementioned crimes. The court imposed the aforementioned sentence on November 15, 2013. Appellant sent a letter to

counsel on November 18, 2013, requesting that he file a post-sentence motion. Counsel, however, averred that he did not receive that letter until November 27, 2013. However, within thirty days of his judgment of sentence, Appellant requested permission to file a *nunc pro tunc* post-sentence motion. The issues he wished to raise in his post-sentence motion related to the weight of the evidence and discretionary sentencing. Rather than expressly deny or grant permission to file the post-sentence motion *nunc pro tunc* inside the original thirty-day appeal period, the trial court failed to act.

Appellant did not appeal within thirty days of the judgment of sentence. The trial court purported to explicitly grant the request to file the motion *nunc pro tunc* and denied it on its merits. By that time, however, it had lost jurisdiction. In its order considering the post-sentence motion as timely filed, but denying the motion on the merits, it expressly informed Appellant that he had the right to appeal within thirty days of its order. Thus, the court incorrectly informed Appellant of his appellate rights. Indeed, the trial court failed to correctly instruct Appellant that, because it had not granted the *nunc pro tunc* request within thirty days, Appellant could no longer timely appeal and that he needed to file a PCRA petition seeking restoration of his direct appeal rights. Had the trial court correctly recognized that it lacked jurisdiction to grant Appellant's request to consider his post-sentence motion as timely when it finally took action, Appellant

could have filed a timely PCRA petition and sought reinstatement of his appellate rights *nunc pro tunc*. A decision to quash would preclude such a procedure as outlined in the body of this memorandum.

Appellant filed the instant appeal within thirty days of the trial court's order granting his request to consider his motion *nunc pro tunc* and denying the motion on the merits. We directed Appellant to show cause for why his appeal should not be quashed as untimely. Appellant complied, and we address our jurisdiction and the timeliness of this appeal *infra*. Appellant raises the following three issues for our review.

1. Was the evidence insufficient as a matter of law such that no reasonable factfinder could have found Mr. Piccolo guilty of Terroristic Threats beyond a reasonable doubt where there was no evidence of record that Frank Piccolo sent the text message at issue but rather that the text message was sent by a third party.

2. Was the verdict of guilty for Terroristic Threats against the weight of the evidence because there was no evidence of record that Frank Piccolo sent the text message at issue, the only evidence offered indicated that the text message was sent by a third party, and in any event, a subsequent text message sent four minutes later explained that the first text message was sent in error.

3. Whether the trial court abused its discretion by ordering an excessive sentence for the crime of Terroristic Threats and/or basing its above-the-guideline sentence on improper factors, i.e., a subsequent, unrelated arrest in another county.

Appellant's brief at 10.

Preliminarily, we consider whether we have jurisdiction in this matter. A timely appeal vests this Court with jurisdiction. ***Commonwealth v.***

***Green***, 862 A.2d 613, 615 (Pa.Super. 2004) (*en banc*). The time for filing an appeal is thirty days from the judgment of sentence, unless a defendant files a timely post-sentence motion. ***See Green***, ***supra*** at 618. In the latter event, the period for filing an appeal is tolled and a defendant may appeal within thirty days of the denial of the post-sentence motion. Pa.R.Crim.P. 720. Ordinarily, a post-sentence motion must be filed within ten days of imposition of the defendant's sentence. ***Id***. However, a defendant may request *nunc pro tunc* consideration of a post-sentence motion within thirty days of the judgment of sentence. ***Commonwealth v. Dreves***, 839 A.2d 1122 (Pa.Super. 2003) (*en banc*). The trial court must expressly grant that motion to retain jurisdiction. ***Id***.

Here, the trial court purported to expressly grant Appellant's request to consider his post-sentence motion *nunc pro tunc*. Further, it explicitly instructed him that he had thirty days to appeal from its denial of his motion on the merits. Undeniably, the trial court's actions occurred after the appeal period from the judgment of sentence had already expired. Cautious counsel should have filed an appeal within thirty days.

Nevertheless, under the unusual circumstances of this case, we hold that this case presents a breakdown in the judicial system. ***Commonwealth v. Braykovich***, 664 A.2d 133, 136 (Pa.Super. 1995) ("It is well-established that the extension of the filing period or the allowance of an appeal *nunc pro tunc* will be permitted only in extraordinary

circumstances, namely, fraud or some breakdown in the processes of the court."); *see also Commonwealth v. Patterson*, 940 A.2d 493, 498-499 (Pa.Super. 2007);[1] *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa.Super. 2003); *Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa.Super. 2001); *Commonwealth v. Bogden*, 528 A.2d 168, 170 (Pa.Super. 1987); *Commonwealth v. Hurst*, 532 A.2d 865, 867 (Pa.Super. 1987); *Commonwealth v. Katz*, 464 A.2d 1343, 1345–1346 (Pa.Super. 1983).

For example, in *Coolbaugh*, the defendant had thirty days to appeal a revocation of probation sentence. The filing of a timely post-sentence motion in revocation sentencing cases does not toll the appeal period. The defendant was incorrectly advised that, if he filed a post-sentence motion, his appeal period would be extended. The defendant was sentenced on April 11, 2000. He did not file a motion until April 24, 2000.[2] The court denied the motion on April 26, 2000, and the defendant appealed on May 26, 2000.

_____

[1] I am aware that I authored a dissenting opinion in *Commonwealth v. Patterson*, 940 A.2d 493 (Pa.Super. 2007). Therein, however, the defendant did not file a motion within thirty days of sentencing requesting *nunc pro tunc* consideration of his post-sentence motion. In addition, the trial court did not purport to grant that request and direct the defendant that he could appeal within thirty days of its order denying the merits of the post-sentence motion.

[2] April 21, 2000 was a Friday; hence, the motion was not filed within ten days of sentencing based on a grace period due to a holiday or weekend.

We did not quash. Indeed, despite the motion itself being untimely, we proceeded to address the merits of the issues that had been raised therein.

Instantly, the court failed to enter an order within the thirty-day time frame addressing Appellant's request to file a *nunc pro tunc* motion. It then legally erroneously informed Appellant that it had granted that motion, and incorrectly instructed him that he had thirty days to appeal from its order denying his post-sentence motion. In this respect we add that *Commonwealth v. Capaldi*, 2015 PA Super 51 and *Dreves*, *supra*, are readily distinguishable.

As highlighted by Appellant, in *Dreves*, the defendant did not file a motion requesting permission to file a *nunc pro tunc* post-sentence motion. *Dreves*, *supra* at 1128. In *Dreves*, unlike here, the trial court "did not even acknowledge that the post-sentence motion was untimely[.]" *Id*. at 1129. Specifically, in *Dreves*, the defendant and his counsel signed a document on the date of sentencing that correctly advised him of his post-sentence motion and appellate filing rights. However, Dreves failed to file a post-sentence motion within ten days of being sentenced. Instead, twenty days after sentencing, on May 30, 2001, Dreves filed a motion to modify his sentence or withdraw his guilty plea *nunc pro tunc*. The trial court did not decide that motion within thirty days of imposition of sentence. Instead, it scheduled and then conducted a hearing on August 3, 2001, well after the period for filing an appeal expired. Since Dreves did not request that the

court consider his motion as timely filed, the court could not grant a request to consider the motion *nunc pro tunc*. The court purported to deny the motion on August 6, 2001, and Dreves appealed on September 4, 2001.

The **Dreves** Court opined that, "if no appeal had been taken, within 30 days after the imposition of sentence, the trial court has the discretion to grant a request to file a post-sentence motion *nunc pro tunc.*" **Dreves**, **supra** at 1128. However, "[i]f the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc,* the court must do so expressly." **Id**.

Here, the trial court did purport to expressly permit Appellant to file his post-sentence motion *nunc pro tunc*; it simply did so after it lost jurisdiction. Pointedly, counsel, following the advice of **Dreves**, expressly filed a request to have his post-sentence motion considered *nunc pro tunc*, but the court took no action for three months before incorrectly informing Appellant that it could and did grant his request to consider that motion as timely filed. Thus, contrary to **Dreves**, the trial court here incorrectly advised Appellant that it granted his request to consider his post-sentence motion as timely and that he had thirty days to appeal after denying the motion.

In **Capaldi**, the court sentenced the defendant on May 19, 2014. Capaldi filed a motion entitled, "Post-Sentence Motion for *Nunc Pro Tunc* Relief" on June 5, 2014. The court scheduled a hearing on the motion for

June 26, 2014, beyond the thirty-day period in which Capaldi had to appeal. The court then denied the motion on the merits. Unlike here, the trial court did not purport to expressly grant the defendant's request to file a *nunc pro tunc* motion. Further, the defendant in **Capaldi** could still seek relief via a PCRA petition requesting the reinstatement of his direct appeal rights since the period for filing a timely PCRA petition would not have elapsed until June 19, 2015. Accordingly, neither **Dreves** nor **Capaldi** are factually similar to what occurred herein. Frankly, in neither case did a trial court inform the defendant that it had granted his motion to consider the post-sentence motion *nunc pro tunc* as timely filed and that the defendant could appeal from the denial of the merits of that motion.

Finally, and critically important, because it implicates Appellant's Pennsylvania constitutional rights, **see** Pa. Const. Art. V, § 9 ("There shall be a right of appeal in all cases to . . . an appellate court"), any decision to quash in this matter would preclude Appellant from seeking reinstatement of his direct appeal rights *nunc pro tunc*. In **Commonwealth v. Brown**, 943 A.2d 264 (Pa. 2008), the Pennsylvania Supreme Court ruled that the untimely filing of a direct appeal did not toll the period for seeking PCRA review. There, the defendant did not file a written post-sentence motion, but made an oral motion. The trial court purported to deny the oral motion eleven months after sentencing. This Court quashed the direct appeal as untimely over a year later. The defendant then sought reinstatement of his

appellate rights via the PCRA. The PCRA court reinstated those rights, but this Court quashed the appeal as untimely based on the underlying PCRA petition being filed outside the one-year time-bar. The Supreme Court agreed, finding that the petitioner's judgment of sentence was final thirty days after the entry of his sentence and that he had one year from that date to file his PCRA petition.

Thus, under **Brown**, Appellant had one year from thirty days after the entry of his judgment of sentence to file a timely PCRA petition. Appellant's judgment of sentence was entered on November 15, 2013. Accordingly, he had until December 16, 2014 to file a timely petition.[3] Therefore, a decision to quash in this matter would have the effect of precluding any merits review of any issues from Appellant's case. Since it is the actions of the trial court and trial counsel that have deprived Appellant of his Pennsylvania constitutional right to a direct appeal, we find it would be highly problematic to quash this appeal. Accordingly, we agree that Appellant's appeal is properly before us due to a breakdown in the judicial system created by the trial court's actions in informing Appellant that it granted his request to consider his post-sentence motion *nunc pro tunc* and that he had thirty days to appeal.

---

[3] December 15, 2013 was a Sunday; accordingly, the thirtieth day for filing a direct appeal was December 16, 2013.

- 11 -

Therefore, we proceed to address the merits of Appellant's contentions. Appellant's initial issue is a challenge to the sufficiency of the evidence. In performing such a review, we consider all of the evidence admitted, even improperly admitted evidence. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. **Id**.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Id**. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. **Id**. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. **Id**. This Court does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." **Id**.

Appellant argues that although the victim received a text message containing a threat to the victim, from a number the victim attributed to Appellant, it could have been sent by another person. He continues, relying on his own evidence, that he did not send the message. Appellant adds that

a second text message was also sent indicating that the threatening message in question was sent in error.

The Commonwealth responds that it demonstrated that Appellant sent the victim text messages that threatened her with crimes of violence. It points out that Appellant admitted sending text messages to the victim throughout the day in question, and had composed the message in question. That threat, according to the Commonwealth, was consistent with other messages sent the same day.

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . . commit a crime of violence to terrorize another." 18 Pa.C.S. § 2706(a)(1). We find that the Commonwealth's evidence was sufficient. First, a person need not send a message personally; rather, they may commit the crime of terroristic threats by indirectly communicating a threat. Thus, Appellant's argument that it is speculation that he sent the message not only disregards our standard of review but is a red herring. Here, the victim testified that she received the threatening message quoted previously from a number associated with Appellant, her estranged husband. Viewed in a light most favorable to the Commonwealth, this evidence establishes the requisite elements of terroristic threats. Appellant's sufficiency claim is meritless.

Appellant's second issue relates to the weight of the evidence. A weight claim must be preserved in a timely post-sentence motion.

***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa.Super. 2012). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphases removed). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id***.

A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Id***. Instead, the trial court must examine whether "'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id***. Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice" should a trial court afford a defendant a new trial. ***Id***. A weight of the evidence issue concedes that sufficient evidence was introduced. ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa.Super. 2006).

Here, Appellant raised his weight claim in his post-sentence motion filed contemporaneously with his request for that motion to be considered *nunc pro tunc*. We have previously determined that the trial court's actions herein resulted in a breakdown in the judicial system for purposes of

- 14 -

jurisdiction. Therefore, we decline to find waiver. Nonetheless, Appellant's position is meritless.

Appellant relies solely on *In re J.B.*, 69 A.3d 268 (Pa.Super. 2013), *vacated by* 106 A.3d 76 (Pa. 2014). Therein, this Court determined that a juvenile's weight of the evidence claim in a murder adjudication was against the weight of the evidence. However, our Supreme Court granted allowance of appeal to decide whether the weight claim was waived due to the failure to preserve the issue in a post-dispositional motion. Ultimately, the High Court held the issue was not waived, but remanded the matter to the juvenile court to consider the weight issue anew. Accordingly, this Court's decision in *In re J.B.*, is of questionable precedential value as to the merits of the weight issue.

Setting aside the continued precedential value of the decision relied on by Appellant, this case is not analogous to *In re J.B*. Appellant's position is essentially identical to his sufficiency argument. He contends that the Commonwealth did not show that Appellant sent the message and only demonstrated the message was sent "from a number associated with Mr. Piccolo." Appellant's brief at 22. Appellant highlights that his own evidence

suggested that another person sent the message.[4]   The Commonwealth counters that Appellant sent a direct threat to the victim regarding messing up her face so that it looked like she was in a car wreck along with a "dozen other lewd and harassing text messages."  Commonwealth's brief at 16.

Instantly, the trial court did not abuse its discretion in deciding that its conscience was not shocked by its own verdict.   The court was free to determine Appellant's evidence lacked credulity.   Further, it is a reasonable inference that a message sent from a number belonging to Appellant was sent by him.   This is especially so when considered in the context of the remaining messages, which were clearly sent by him.   This is simply not a case where certain facts delineated by Appellant are so clearly of greater weight than the Commonwealth's evidence that disregarding Appellant's facts would deny justice.

The final issue Appellant levels on appeal pertains to the discretionary aspects of his sentence.  To adequately preserve a discretionary sentencing claim, the defendant must present the issue in either a post-sentence motion, or raise the claim during the sentencing proceedings. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*).  Further, the defendant must "preserve the issue in a court-ordered

_____

[4] Appellant also sent a message after the threatening message stating, "Oh crap.  LOL.  I was sending that to someone else, honey.  My bad."  N.T., 9/20/13, at 25.

- 16 -

Pa.R.A.P. 1925(b) concise statement and a Pa.R.A.P. 2119(f) statement." *Id*. Importantly, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Id*. "[A]n appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Id.*

When considering the merits of a discretionary aspect of sentencing claim, we analyze the sentencing court's decision under an abuse of discretion standard. ***Commonwealth v. Dodge***, 77 A.3d 1263, 1274 (Pa.Super. 2013). In conducting this review, we are guided by the statutory requirements of 42 Pa.C.S. § 9781(c) and (d). *Id*. Section 9781(c) provides that this Court shall vacate a sentence and remand under three circumstances. Relevant hereto is if the sentence is outside the standard sentencing guidelines and the sentence is unreasonable. 42 Pa.C.S. § 9781(c)(3). In addition, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

As with Appellant's weight issue, Appellant raised a discretionary sentencing claim in his post-sentence motion. That motion was not timely;

however, Appellant did request *nunc pro tunc* consideration of that motion. Since the trial court's attempt to grant Appellant's *nunc pro tunc* relief constituted a breakdown in the judicial system, we do not find waiver on this ground. Moreover, Appellant raised the claim in his Pa.R.A.P. 1925(b) statement, and although he has failed to provide a Pa.R.A.P. 2119(f) statement in his brief, the Commonwealth did not object. ***Commonwealth v. Stewart***, 867 A.2d 589 (Pa.Super. 2005) (discretionary sentencing claim not waived where Commonwealth did not object to absence of 2119(f) statement). Thus, we consider Appellant's position.

Initially, we disagree with the Commonwealth's assertion that Appellant has not raised a substantial question. Appellant argues that a substantial question exists because the court sentenced him above the sentencing guideline ranges using an impermissible sentencing factor; specifically, a post-conviction arrest for kidnapping the same victim herein. Whether a court considered an impermissible sentencing factor in imposing a sentence does present a substantial question. ***Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa.Super. 2009). We do not look to the merits of the underlying argument to determine if such a question exists. ***Dodge***, ***supra*** at 1270.

However, we hold that Appellant is not entitled to relief. The trial court considered a presentence report, a mental health evaluation, the victim's impact statement, defendant's allocution, and argument by counsel.

It placed on the record that Appellant was dangerous to society and a poor candidate for rehabilitation. The court noted that Appellant was mentally unstable and, while acknowledging Appellant's arrest, it did not use that consideration as the sole factor in imposing its sentence. Indeed, the court in its Rule 1925(a) opinion opined that it did not consider his arrest in crafting Appellant's sentence. The court in imposing its sentence did not refer to Appellant's subsequent criminal conduct, which also involved his estranged wife. Thus, the record does not sustain Appellant's position.

Judgment of sentence affirmed.

Justice Fitzgerald Joins the Memorandum

Judge Shogan files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/2015